UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL KOCIUBA,

                              Plaintiff,

v.                                                          5:16-CV-0064
                                                            (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON          STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.              JEREMY A. LINDEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II  Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Michael Kociuba

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. No. 10, 12.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for

judgment on the pleadings is denied.

# I. RELEVANT BACKGROUND

## A. Factual Background

Plaintiff was born in 1958, making him 53 years old at the alleged onset date and 55 years old at the date of the ALJ's decision. Plaintiff reported graduating high school and obtaining an Associate's Degree in Mechanical Technology in the 1990s or 2000s, and has past work as a heating and air conditioning installer servicer and material handler. Plaintiff was insured for disability benefits under Title II until December 31, 2016. Generally, Plaintiff alleges disability consisting of anxiety, depression, arthritis, diabetes, high cholesterol, high blood pressure, acid reflux, sleep apnea, and hearing difficulties.

## B. Procedural History

Plaintiff applied for Title II Disability Insurance Benefits on December 19, 2012, alleging disability beginning April 23, 2012. Plaintiff's application was initially denied on March 29, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On June 19, 2014, Plaintiff appeared at a video hearing before ALJ Joseph L. Brinkley. On October 3, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-23.) On December 28, 2015, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 12-23.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 23, 2012. (T. 14.) Second, the ALJ found that Plaintiff's sleep apnea, arthritis status-post laminectomy, bilateral hearing loss, obesity, type II diabetes mellitus, hypertension, tobacco abuse, anxiety, depression, and history of panic disorder are severe

impairments. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments do not meet or

medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the

"Listings"). (T. 15-16.) More specifically, the ALJ considered Listings 1.02 (major dysfunction

of a joint), 2.00 (special senses and speech), 3.00 (respiratory disorders), 4.00 (cardiovascular

system), 9.00 (endocrine disorders), 12.04 (mood disorders) and 12.06 (anxiety disorders). (*Id.*)

Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> medium work, as defined in 20 C.F.R. 404.1567(c) except, the
> claimant: can occasionally lift/reach overhead with the bilateral
> upper extremities. He can occasionally twist, climb ramps and
> stairs, balance, kneel, and stoop, but can never crawl, crouch, or
> climb ladders, ropes, and scaffolds. He must avoid louder than an
> office noise-type environment and avoid even moderate exposure to
> environmental irritants and humidity. In addition, he must avoid
> concentrated exposure to wetness, vibrations, extreme hot or cold
> temperatures, as well as workplace hazards-including unprotected
> heights, dangerous machinery, and uneven terrain. Further, he is
> limited to simple, routine, and repetitive tasks, and to engaging in
> low-stress work that does not require high volume production
> quotas.

(T. 16.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (T. 22.)

Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform, including laundry worker, dietary aide, and body

assembler. (T. 22-23.)

**D.** **The Parties' Briefings on Their Cross-Motions**

Generally, Plaintiff asserts three arguments in support of his motion for judgment on the

pleadings. First, Plaintiff argues that the ALJ erred in failing to properly apply the treating

physician rule. (Dkt. No. 10, at 4-8 [Pl. Mem. of Law].) More specifically, Plaintiff argues that

the ALJ erred in failing to afford controlling weight to the opinions of Dr. Robinson or, in the

alternative, to "explicitly consider the factors outlined in 20 C.F.R. § 404.1527(c)." (*Id.*)

Plaintiff argues that the ALJ's reasons for rejecting Dr. Robinson's opinion do not constitute good reasons as required by the regulations and that the ALJ erred in failing to consider factors such as whether these opinions were consistent with the evidence in the record as a whole. (Dkt. No. 10, at 7 [Pl. Mem. of Law].) Second, Plaintiff argues that the ALJ committed reversible error in accounting for the opinion of a Single Decision Maker[1] when formulating the RFC. (Dkt. No. 10, at 8-10 [Pl. Mem. of Law].)

Third, and finally, Plaintiff argues that the ALJ erred in failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles. (Dkt. No. 10, at 10- [Pl. Mem. of Law].) More specifically, Plaintiff argues that (1) the ALJ failed to reconcile the hypothetical question containing a limitation to occasional overhead reaching with the vocational expert's testimony that Plaintiff would be able to perform three jobs that the Dictionary of Occupational Titles indicated as requiring the ability to frequently reach, (2) the ALJ's limitation for the need to avoid even moderate exposure to humidity and concentrated exposure to wetness and extreme heat are inconsistent with the characteristics listed in the Selected Characteristics of Occupations for the jobs identified by the vocational expert, and (3) there is a conflict between the ALJ's finding that Plaintiff could never crouch and the ALJ's assertion that Plaintiff could perform work as a Motor Vehicle Assembler, which Plaintiff indicates requires the ability to occasionally crouch per the Selected Characteristics of Occupations. (Dkt. No. 10, at 10-12 [Pl. Mem. of Law].)

---

[1] "'Single decision makers . . . are non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Robels v. Comm'r of Soc. Sec.*, No. 5:15-CV-1359, 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016) (quoting *Martin v. Astrue*, 10-CV-1113, 2012 WL 4107818, at *15 (N.D.N.Y. Sept. 19, 2012)).

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, in response to Plaintiff's first and second arguments, Defendant argues that the ALJ properly evaluated the evidence when determining Plaintiff's RFC. (Dkt. No. 12, at 5-14 [Pl. Mem. of Law].) More specifically, Defendant argues that the ALJ properly evaluated the opinions from Dr. Robinson, noting that Dr. Robinson's opinions were in a check-box format that is "not particularly informative," that Dr. Robinson had only examined Plaintiff three times during the relevant period and his treatment notes did not show significant symptoms, that the two assessments Dr. Robinson completed were inconsistent with each other, that the other medical evidence the ALJ considered did not support Dr. Robinson's opinions, and that Plaintiff's own statements were contrary to the extent of limitations Dr. Robinson opined. (Dkt. No. 12, at 6-11 [Def. Mem. of Law].) Defendant argues that "the ALJ reasonably found that Dr. Robinson's conclusions were not supported by his treatment evidence and were not consistent with each other or with other medical and subjective evidence of record." (Dkt. No. 12, at 12 [Def. Mem. of Law].) Relatedly, Defendant also argues that the ALJ's "accounting" for the statement of the Single Decision Maker was not error because the ALJ considered this opinion relating to the Step Two severity finding rather than when assessing the RFC, and because the ALJ's RFC assessment was more restrictive than the assessment made by the Single Decision Maker. (Dkt. No. 12, at 13-14 [Def. Mem. of Law].)

Second, in response to Plaintiff's third argument, Defendant argues that the ALJ fulfilled any legal obligation to resolve conflicts at Step Five because he questioned the vocational expert as to whether there were any conflicts between that source's testimony and the Dictionary of Occupational Titles (and the vocational expert indicated there were not), he allowed Plaintiff the opportunity to question the vocational expert, and he gave the vocational expert a chance to

respond to Plaintiff's objections regarding the ability to crouch in the performance of medium work. (Dkt. No. 12, at 14-15 (Def. Mem. of Law].) Defendant argues that there is no "actual conflict" between a limitation for no overhead reaching and the specification in the Selected Characteristics of Occupations that the identified jobs required the ability to frequently reach, noting that there was also little evidence supporting any reaching restriction in the evidence. (Dkt. No. 12, at 16-17 (Def. Mem. of Law].) Defendant then argues that the terms used in the RFC for avoiding even moderate exposure to humidity and avoiding concentrated exposure to temperature extremes and wetness do not conflict with the Selected Characteristics of Occupations' specification that some of the identified jobs require occasional exposure to humidity and extreme heat. (Dkt. No. 12, at 17 [Def. Mem. of Law].) Lastly, Defendant argues that, even if the ALJ's restriction for never crouching is inconsistent with the requirement for occasional crouching for the dietary aide and body assembler occupations, the third identified occupation of laundry worker did not require crouching and existed in significant numbers to constitute substantial evidence to support the Step Five determination on its own. (Dkt. No. 12, at 18 [Def. Mem. of Law].)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence

standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Complied with the Requirements of the Treating Physician Rule When Affording Limited Weight to the Opinions from Dr. Robinson

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's motion for judgment on the pleadings. (Dkt. No. 10, at 4-8 [Pl. Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

As an important initial matter, Defendant's brief contains multiple instances of *post hoc* arguments attempting to justify the ALJ's findings by providing supporting rationale that the ALJ himself never asserted in the decision. "This Court simply cannot, and will not, re-weigh the medical evidence and/or 'create *post-hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.'" *Bartrum v. Astrue*, 32 F.Supp.3d 320, 331 (N.D.N.Y. 2012) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.

9

1999); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)); *Petersen v. Astrue*, 2 F.Supp.3d 223, 234 (N.D.N.Y. 2012) (stating the same proposition). Defendant's arguments that Dr. Robinson's opinions merited rejection due to the check-box form of those opinions and the fact that Dr. Robinson had seen Plaintiff only three times during the relevant period in particular are examples of rationale that Defendant now asserts as reasons for upholding the ALJ's findings that the ALJ did not actually put forth in his decision. (Dkt. No. 12, at 6-12 [Def. Mem. of Law]; T. 18-19.) The Court declines to accept these *post hoc* justifications and instead will address those reasons that the ALJ actually provided for rejecting Dr. Robinson's opinions.

In terms of the ALJ's rejection of Dr. Robinson's functional opinions related to Plaintiff's physical functioning, the ALJ asserted three explicit reasons: (1) that some of Dr. Robinson's opined limitations were inconsistent with Plaintiff's reported functioning; (2) that portions of Dr. Robinson's opinion from April 2013 were inconsistent with the limitations he later opined about in the May 2014 opinion; and (3) that the limitations Dr. Robinson opined were inconsistent with Plaintiff's reported daily activities, which the ALJ asserted included making plans to fly to Ireland for his daughter's wedding and performing home improvement on his daughter's house. (T. 18-19.)

First, the ALJ asserted that Dr. Robinson's opinions were inconsistent with a number of reports Plaintiff made as to his ability to perform work-related functions, such as that he could walk only 20 feet (which the ALJ found inconsistent with Dr. Robinson's April 2013 notation that Plaintiff could stand or walk occasionally) and that he could lift only five pounds (which the ALJ found inconsistent with Dr. Robinson's May 2014 notation that Plaintiff could lift and carry ten pounds or less occasionally). (T.18-19.) However, there is a major internal inconsistency in the ALJ's rationale: he found that Plaintiff's reports and allegations about the functional effects

of his impairments were not entirely credible.  (T. 21.)  The ALJ cannot logically reject

Plaintiff's reports about the functional effects of his impairments and yet use those same rejected

allegations as evidence to support rejecting Dr. Robinson's opinions.  *See McFall v. Colvin*, No.

15-CV-6176, 2016 WL 1657877, at *10 (W.D.N.Y. Apr. 27, 2016) (finding the ALJ should have

explained an apparent inconsistency between purporting to afford appreciable weight to an

opinion while at the same time failing to accept the significant limitations contained in that

opinion).  Given the unreconciled internal inconsistencies in the ALJ's logic, this first reason

does not qualify as a good reason supported by substantial evidence for rejecting Dr. Robinson's

opinions.

Second, although there are inconsistencies between the opinions Dr. Robinson completed

in April 2013 and May 2014, this Court does not believe that those inconsistencies, taken alone,

can constitute a basis for rejecting both opinions.  As an initial matter, these opinions were

rendered more than a year apart, which is a sufficient amount of time in which an individual's

functioning could reasonably be found to have changed; this is not a case where a physician

provided multiple inconsistent opinions over the span of a few months without explanation.  It is

clear from the record that the last time Dr. Robinson treated Plaintiff was in April 2013, when he

rendered the first opinion, a fact which the ALJ did not explicitly recognize.  (T. 18, 541.)

However, even if there was little basis for the different restrictions opined in May 2014 due to

the fact that Dr. Robinson had not re-examined or treated Plaintiff in the interim, the ALJ should

have rejected that later opinion for such reasons rather than using the later opinion as a

justification for rejecting both opinions.  After all, the April 2013 opinion was rendered during

the time Dr. Robinson had been treating Plaintiff and after an examination on the same date.

However, the ALJ did not appear to consider (as will be discussed in greater detail below

shortly) whether the limitations in the April 2013 opinion were consistent with that examination or the others that preceded it, instead relying on the inconsistency between the two opinions themselves to reject Dr. Robinson's limitations for sitting, standing, walking, lifting, and carrying in particular. (T. 18-19.) Although "'[i]t is the role of the Commissioner, not the reviewing court, to resolve evidentiary conflicts,'" it is not apparent that the ALJ actually resolved the conflict between these two opinions, but it appears that he simply rejected both without applying the required factors to each as individual pieces of different opinion evidence. *Dailey v. Comm'r of Soc. Sec.*, No. 5:14-CV-1518, 2016 WL 922261, at *7 (N.D.N.Y. Feb. 18, 2016), report and recommendation adopted in 2016 WL 917941 (quoting *Cichocki v. Astrue*, 534 F.App'x 71, 75 (2d Cir. 2013)); *see also Hamedallah ex rel. E.B. v. Astrue*, 876 F.Supp.2d 133, 148 (N.D.N.Y. 2012) ("[T]he Regulations require an ALJ to 'evaluate every medical opinion.'") (quoting 20 C.F.R. § 416.927). This type of analysis turns a blind eye to the practical facts of the case and is not consistent with the requirements of treating physician rule. The Court therefore declines to find that the ALJ's citation to the inconsistencies between Dr. Robinson's two opinions constituted a good reason for rejecting both opinions in the context of the facts of the case and the ALJ's apparent failure to meaningfully apply the factors of the treating physician rule in addition to noting these inconsistencies.

Third, the ALJ's use of reported activities such as Plaintiff's apparent plans to travel to Ireland for his daughter's wedding and performance of home improvement activities is also problematic. As an initial matter, the ALJ's assertions that Plaintiff made "contradicting" statements about whether he was going to take a seven-hour flight to Ireland do not account for what the hearing testimony actually shows. Although Plaintiff did initially state, "[Y]es, I hope to," in response to the ALJ's question, "[A]re you going to attend the wedding in Ireland?" he

quickly amended that statement, testifying he had actually been indicating he hoped to attend the second ceremony they were having in the United States, but had not heard the ALJ say "in Ireland" in the initial question. (T. 43-44.) Even after explaining as much, the ALJ still held onto his assumption that Plaintiff was trying to mislead the Agency by changing his answer. (T. 19, 44-45.) However, given that the ALJ found Plaintiff had a severe impairment of bilateral hearing loss and the medical evidence substantiates moderate hearing loss with recommendations for hearing aids, the ALJ should have given consideration to Plaintiff's testimony that he had simply misheard the original question; yet there is no indication that he did.

Regarding Plaintiff's reports of activities such as home improvement and wood working, there is not enough evidence in the record regarding these activities from which the ALJ could conclude that they actually contradicted the limitations in either or both of Dr. Robinson's opinions. In one of his function reports submitted to the Agency, Plaintiff indicated that he could do most household chores and yard work, but noted that he needed to get help with "some repairs," needed assistance with weed-trimming and raking, and was unable to do any lifting. (T. 211.) Plaintiff noted he did "some wood working" but did not specify what that entailed. (T. 212.) He also reported he could not lift more than five or ten pounds due to his back pain and sometimes had to stop and sit for a while when performing activities. (T. 213, 215.) The ALJ did not point to any evidence in which Plaintiff reported that these activities were as exertionally demanding as the ALJ assumed them to be. There is also no indication that the ALJ attempted to elicit any testimony at the hearing regarding what type of home improvement Plaintiff was engaged in or how exertionally demanding any such activities were that Plaintiff was engaging in. (T. 41-47.) Based on the evidence that is available, these reported activities do not constitute a good reason supported by substantial evidence to reject a treating physician's opinion. *See*

13

*Manning v. Astrue*, No. 09-CV-0088, 2010 WL 2243350, at *6 (W.D.N.Y. Apr. 30, 2010) (finding remand warranted where, in part, "the ALJ overstated the extent of certain of Plaintiff's activities and made assumptions about other activities that are not supported by the record").

Although Defendant is correct in stating that Dr. Robinson examined Plaintiff three times during the relevant period (since the alleged onset date of April 23, 2012), the ALJ's assessment ignores that Dr. Robinson had an extensive and frequent treatment relationship with Plaintiff since at least January 2010, a treatment relationship that is documented in the submitted medical records from Syracuse Orthopedic Specialists. (Dkt. No. 12, at 7 [Def. Mem. of Law]; T. 251-54, 248, 282, 286, 290, 294, 296, 299, 303, 306, 309, 312, 315, 318, 326, 330, 334, 493-95.) There is nothing in the ALJ's discussion of the evidence or of the weight afforded to Dr. Robinson's opinions which indicates the ALJ properly considered the extensive treatment relationship Dr. Robinson had with regard to Plaintiff's spinal impairment. (T. 17-19.)

Additionally, although Defendant asserts that the ALJ's decision indicates that the ALJ found Dr. Robinson's opinion unsupported by the medical evidence in the record, this Court finds that argument unpersuasive. (Dkt. No. 12, at 7-11 [Def. Mem. of Law].) In particular, the ALJ did not make any explicit statement that the functional portions of Dr. Robinson's opinions were inconsistent with his own treatment observations or with the other medical treatment in the record. The ALJ did afford limited weight to two specific limitations from Dr. Robinson's opinions (that Plaintiff would miss more than four days per month from work and would be incapable of sustaining full-time work) due to the fact that "his treatment notes as well as the longitudinal record do not support such severe limitations." (T. 19.) Given that the ALJ explicitly noted that this inconsistency related to those two specific limitations, this Court declines to find that this means the ALJ clearly considered whether the other portions of Dr.

14

Robinson's opinion were also inconsistent with Dr. Robinson's treatment notes and the other

medical treatment evidence as Defendant seems to assert. Nor did the ALJ provide a detailed

discussion of the treatment evidence from which this Court can determine that the ALJ intended

to hold out such a reason for rejecting Dr. Robinson's opinions. In fact, the ALJ's discussion of

Plaintiff's medical treatment is vague and contains few specifics as to what treating and

examining sources (including Dr. Robinson) observed. For example, the ALJ noted that exams

with Dr. Robinson from January and April 2013 showed "mild spinal tenderness and some

decreased range of motion," but the "remainder of an examination at the time was virtually

unremarkable." (T. 17.) However, the ALJ's characterization ignores other findings. On

December 4, 2012, Dr. Robinson additionally observed that Plaintiff had difficulty moving from

a seated to standing position during the exam due to low back pain and chronic numbness along

the left lateral calf. (T. 249.) On January 29, 2013, Dr. Robinson additionally observed pain to

the posterior thighs with straight leg raising bilaterally and 4/5 strength in the extensor hallucis

longus tendon of the bilateral lower extremities. (T. 494.) Dr. Robinson's findings from April 8,

2013, were similar to those from January 2013. (T. 251-52.) Given the ALJ's cursory

discussion of the treatment evidence and his failure to acknowledge greater abnormal

observations within treatment notes he asserted showed little abnormality, this Court cannot

conclude that the ALJ's discussion of the medical evidence implicitly shows he rejected the

entirety of Dr. Robinson's opinions based on an inconsistency with either Dr. Robinson's own

treatment notes or with the medical treatment evidence as a whole. *See Coleman v. Comm'r of

Soc. Sec.*, No. 5:14-CV-1139, 2015 WL 9685548, at *5 (N.D.N.Y. Dec. 11, 2015) (finding

remand appropriate where the ALJ failed to provide an analysis of many of the required factors

outlined in 20 C.F.R. § 404.1527(c) when assessing the treating physician's opinion and

provided little discussion or citation to evidence that supported her conclusion that the opinion was not supported by objective medical evidence).

For all of the above reasons, the ALJ's failed to analyze Dr. Robinson's opinions according to the treating physician rule or provide the required good reasons supported by substantial evidence for rejecting both of these opinions. Remand is therefore appropriate.

**B. Whether the ALJ Committed Error in Accounting for the Assessment of the Single Decision Maker**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's motion for judgment on the pleadings. (Dkt. No. 10, at 8-10 [Pl. Mem. of Law].) To those reasons, the Court adds the following analysis.

This Court has noted that "ALJs have been instructed by the Social Security Administration that the opinions of SDMs 'should not be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error." *Robles*, 2016 WL 7048709, at *5 (quoting *Martin*, 2012 WL 4107818, at *15); *see also Box v. Colvin*, 3 F.Supp.3d 27, 46 (E.D.N.Y. 2014) ("Because 'a single decision maker [] is not a medical professional[,] [] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.'") (quoting *Sears v. Astrue*, No. 2:11-CV-0138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012)).

In *Hart v. Astrue*, this Court found that the ALJ's decision to afford even minimal weight to a Single Decision Maker's assessment was harmless error because the ALJ adopted greater restrictions on the plaintiff's abilities to lift, carry, push and pull than indicated by that source, the ALJ's conclusions were supported by the medical record as a whole (including opinions from a treating physician and consultative examiner), and it was clear that "the ALJ would have

16

reached the same conclusion even if she had assigned no evidentiary weight to the SDM's assessment." *Hart v. Astrue*, 32 F.Supp.3d 227, 237 (N.D.N.Y. 2012) (citing *Yorkus v. Astrue*. No. 10-2197, 2011 WL 7400189, at *5 (E.D.Pa. Feb. 28, 2011)).  However, unlike in *Hart*, in this case there is no opinion evidence that clearly supports the ALJ's conclusions in the RFC assessment and it is not clear whether the ALJ would have found an ability to exertionally perform a range of medium work without having "accounted" for this opinion.

Rather, this case presents a startlingly similar situation as that in *Medick v. Colvin*, in which this Court recently found that, although the ALJ's RFC contained limitations that differed from the assessment of the Single Decision Maker, "it was not clear that the ALJ assigned no medical weight to the SDM's opinion because the only other medical opinions in the record that provided an RFC [] suggested far more significant restrictions." *Medick v. Colvin*, No. 5:16-CV-0341, 2017 WL 886944, at *15 (N.D.N.Y. Mar. 6, 2017).  This Court noted that the ALJ's rejection of all the medical source opinions and formulation of the RFC without reliance on any medical opinion raised questions as to whether the ALJ had in fact accorded improper evidentiary weight to the Single Decision Maker's assessment.  *Medick*, 2017 WL 886944, at *15.  This Court remanded to the Commissioner based on this lack of clarity and errors in weighing other opinion evidence.  *Id.*

The ALJ afforded limited weight to the only two medical sources who provided functional opinions related to Plaintiff's physical functioning: treating physician Dr. Robinson and consultative examiner Dr. Ganesh.  (T. 18-19.)  Dr. Robinson's opinions (discussed extensively above) very clearly suggest an exertional level less than medium.  (T. 255, 541-43.)  On February 22, 2013, consultative examiner Dr. Ganesh opined that Plaintiff had no gross limitations in sitting, standing and walking, but that he had moderate limitations for lifting,

carrying, pushing, and pulling. (T. 238.) The ALJ afforded limited weight to Dr. Ganesh's opinion primarily based on what the ALJ saw as a "contradiction with the claimant's reported activities of daily living." (T. 19.) Although Dr. Ganesh's specification of "moderate" limitation is somewhat vague, the ALJ's rejection of this opinion suggests that the ALJ interpreted such limitations as being more restrictive than the ability to lift and carry up to 50 pounds at one time and up to 25 pounds frequently. *See* SSR 83-10 (defining medium work). Courts have also suggested that a moderate limitation in exertional activities such as lifting, carrying, pushing, and pulling is more consistent with an ability to perform light (rather than medium) work. *See Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) (finding no error in an RFC for light work where a source opined moderate limitations in the abilities to perform repetitive heavy lifting, bending, reaching, pushing, pulling, or carrying) (collecting cases making similar findings); *James v. Astrue*, No. 09-CV-0424, 2010 WL 5536338, at *6 (N.D.N.Y. May 7, 2010) (finding the ALJ's conclusion that plaintiff could lift 20 pounds occasionally and 10 pounds frequently was inconsistent with the consultative examiner's "moderate-to-severe" limitation in lifting and carrying, noting however that a moderate limitation "would not necessarily be incompatible with the ability to perform light work"). Therefore, it appears that Dr. Ganesh's opinion is also contrary to the ALJ' finding that Plaintiff retained the capacity to perform medium work.

As noted previously, the ALJ afforded limited weight to opinions provided by the medical sources regarding Plaintiff's physical limitations and has not clearly indicated what contrary substantial evidence medical evidence supports his conclusion that Plaintiff retained the ability to perform work specifically at the medium exertional level. Instead, the ALJ appears to have relied quite heavily on a selection of Plaintiff's reported daily activities when rejecting both

opinions, such as Plaintiff's reports that he enjoyed woodworking, that he was being more active, and that he was helping with home improvement projects on his daughter's house. (T 17-19, 21.) However, as discussed above in Part III.A of this Decision and Order, the ALJ's assertions that Plaintiff's reported involvement in activities like home improvement and wood working showed an ability to perform medium work are not supported by the scant evidence related to those activities that is present in the record.

This Court is also not persuaded by Defendant's attempts to argue semantics by asserting that the ALJ's indication that he accounted for the Single Decision Maker's statement "in assessing the severity of the claimant's alleged conditions" means he only considered such assessment at Step Two and not at the later steps of the sequential evaluation involving the RFC. (Dkt. No. 12, at 13 [Def. Mem. of Law].) As already discussed, the ALJ concluded that Plaintiff remained able to perform a range of medium work despite the fact that all medical sources who offered functional assessments arguably found greater limitations warranted, and the ALJ failed to adequately point to what medical or other evidence provided substantial evidence for that conclusion. Given that the only evidence which clearly supports an ability to perform medium work is the Single Decision Maker's assessment, it is not clear that the ALJ restricted his consideration of this opinion only to the matter of determining the severity of Plaintiff's impairments at Step Two. *See Medick*, 2017 WL 886944, at *15 (noting that, even where the ALJ stated he "accounted for the opinion in assessing the severity of plaintiff's conditions," the real issue was whether "it is clear that the ALJ did not actually rely on the SDM's opinion in making his RFC assessment;" the Court however concluded that it was not clear that the ALJ had in fact restricted his consideration of the assessment to the issue of severity).

Whether the ALJ erred in finding Plaintiff limited to even work at the light exertional level matters in this specific case given Plaintiff's age change from an individual closely approaching advanced age to an individual of advanced age during the relevant period. The Medical-Vocational Guidelines pertaining to light work show that there is a question as to whether Plaintiff could have been found disabled upon obtaining age 55, though the record has not been developed sufficiently on the matters of whether Plaintiff's education provided direct entry into skilled work or whether he had transferable skills to answer that question definitively. *See* 20 C.F.R. § 404, Subpart P, Appendix II, Table No. 2. Consequently, if the ALJ did rely on the Single Decision Maker's opinion to make his finding that Plaintiff could perform medium work, that error may have directly impacted the ultimate outcome of Plaintiff's claim. Such questions will need to be explored on remand.

For all the above reasons, this Court finds that the lack of clarity regarding the extent to which the ALJ may have improperly relied on the Single Decision Maker's assessment when formulating the RFC merits remand for further administrative proceedings. *See Gallow v. Comm'r of Soc. Sec.*, No. 5:15-CV-1017, 2016 WL 5854281, at *6 (N.D.N.Y. Sept. 13, 2016) (finding remand appropriate where "[t]his Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a 'reasonable basis for doubt' as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision") (citing *Rockwood v. Astrue*, 614 F.Supp.2d 252, 280 (N.D.N.Y. 2009)).

**C. Whether the ALJ Failed to Properly Resolve Conflicts Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles**

Given the errors identified previously relating to the weight afforded to the opinions of Dr. Robinson and Dr. Ganesh (both of which suggest a capacity for less-than-medium work) and the need for clarity regarding the degree to which the ALJ relied on the Single Decision Maker's assessment in making the conclusion that Plaintiff remained capable of performing a range of medium work, the Court declines to reach the merits of the parties' argument related to the occupations identified at Step Five. Consideration of these issues according to the proper standards on remand will necessarily require to the ALJ to also re-consider Plaintiff's RFC and the jobs he might be able to perform with that RFC, obviating the need for a detailed analysis of the issue at this time.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: May 19, 2017
     Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge